MARLENE HOGAN, APRIL CORNATZER, and SONYA MITCHELL v. FOR-
SYTH COUNTRY CLUB COMPANY

No. 8521SC292

(Filed 4 March 1986)

1. **Master and Servant § 87.1; Torts § 1; Trespass § 2— intentional infliction of emotional distress—actions not barred by Workers' Compensation Act**

   Plaintiffs' civil actions against their former employer for the intentional infliction of emotional distress are not barred by the exclusivity of remedies provision of the Workers' Compensation Act, N.C.G.S. § 97-10.1.

2. **Master and Servant § 34.2; Torts § 1; Trespass § 2— intentional infliction of emotional distress—employer's ratification of employee's acts**

   Plaintiff's forecast of evidence was sufficient to support her claim for the intentional infliction of emotional distress where it tended to show that a chef employed by defendant made sexually suggestive remarks to her while she was working; the chef would brush up against plaintiff, rub his penis against her buttocks and touch her buttocks with his hands; when she refused his advances, he screamed profane names at her, threatened her with bodily injury, and on one occasion, advanced toward her with a knife and slammed it down on a table in front of her; and as a result of the chef's actions toward her, plaintiff became nervous, anxious, humiliated and depressed and was required to seek medical treatment for ulcers. Furthermore, plaintiff's forecast of evidence presented a jury question as to whether defendant ratified and was thus liable for its employee's intentional infliction of emotional distress on plaintiff where it tended to show that plaintiff complained to defendant's general manager several times concerning the chef's conduct but the general manager did nothing to prevent further sexual harassment of plaintiff by the chef and ultimately terminated plaintiff's employment with defendant.

3. **Torts § 1; Trespass § 2— intentional infliction of emotional distress—insufficient evidence**

   A second plaintiff's forecast of evidence was insufficient to support her claim for the intentional infliction of emotional distress where it tended to show that defendant's chef screamed and shouted at her, called her names, interfered with her supervision of waitresses under her charge, and on one occasion threw menus at her.

4. **Torts § 1; Trespass § 2— intentional infliction of emotional distress—insufficient evidence**

   A third plaintiff's forecast of evidence was insufficient to support her claim for the intentional infliction of emotional distress where it tended to show that defendant's general manager refused to grant her a pregnancy leave of absence, directed her to carry objects such as trash bags, vacuum cleaners and bundles of linen weighing more than 10 pounds while she was pregnant, cursed at her on one occasion, refused her request to be allowed to leave work to go to the hospital, and terminated her employment when she left work without permission.

**5. Master and Servant § 29— negligent retention of employee—sufficiency of evidence**

Plaintiff's forecast of evidence was sufficient to maintain her claim against defendant for negligent retention of an employee where it tended to show that the employee committed the tort of intentional infliction of emotional distress by sexually harassing plaintiff and that defendant's general manager retained the employee in a supervisory position after having actual notice of his proclivity to engage in sexually offensive conduct toward other employees.

**6. Master and Servant § 87.1— negligent retention of employee—action not barred by Workers' Compensation Act**

Plaintiff employee's claim for negligent retention of another employee who sexually harassed plaintiff was not barred by the Workers' Compensation Act since sexual harassment is not a risk to which an employee is exposed because of the nature of her employment.

**7. Master and Servant § 29— negligent retention of employee—insufficient evidence**

Where the evidence was insufficient to establish that either of two plaintiffs had been injured by actionable tortious conduct of an employee of defendant, neither plaintiff may maintain an action against defendant based upon its negligence in employing or retaining the allegedly incompetent employee.

**8. Master and Servant § 10.2— wrongful discharge from employment—insufficient evidence**

Plaintiff's forecast of evidence was insufficient to support a claim for wrongful discharge from her employment at will where it tended to show that a chef employed by defendant became hostile toward plaintiff after plaintiff resisted his sexual advances, that the chef threatened to resign if plaintiff was retained as an employee, and that defendant's general manager terminated plaintiff's employment because the chef was more valuable to defendant than plaintiff was, but there was no evidence that defendant terminated plaintiff's employment in retaliation for her refusal to submit to the chef's sexual advances.

**9. Master and Servant § 10.2— wrongful discharge from employment—insufficient evidence**

The forecasts of evidence of two plaintiffs were insufficient to support claims for wrongful discharge from employment at will where the first plaintiff's evidence tended to show that another employee verbally abused her and other female employees and that she was discharged in retaliation for her complaints about the other employee, and where the second plaintiff's evidence tended to show that she was terminated after leaving work for medical treatment despite the demand of defendant's general manager that she remain at work.

APPEAL by plaintiffs from *Freeman, Judge.* Judgment entered 31 October 1984 in Superior Court, FORSYTH County. Heard in the Court of Appeals 17 October 1985.

Plaintiffs, three former employees of Forsyth Country Club Company, joined together to bring this civil action seeking damages for alleged wrongful acts committed by or imputed to defendant. Each plaintiff alleges (1) that she has suffered damages due to severe mental and emotional distress intentionally inflicted by defendant through its agents and employees; (2) that she has suffered damages for mental and emotional distress caused by defendant's negligence in hiring and retaining incompetent and abusive employees; and (3) that she has sustained damages by reason of defendant's wrongful termination of her employment. Actual and punitive damages are sought by each of them. Though the claims asserted by each plaintiff are similar, the factual allegations in support thereof are distinctive and are, therefore, summarized separately.

Plaintiff April Cornatzer alleges that she was employed by Forsyth Country Club (the Club), which is owned and operated by defendant, from 1980 until March 1983. She alleges that beginning in September 1982, the Club's chef, Hans Pfeiffer, began shouting at her, using profanity, interfering with her duties and threatening her. In addition, she alleges he made sexual advances toward her; made sexually derogatory remarks about her; and placed her in fear of bodily harm. She alleges that she complained to Richard Brennan, who was manager of the Club at the time, but that he failed to take any steps to prevent Pfeiffer's harassment of her. She also alleges that Pfeiffer was frequently intoxicated while at work and was abusive toward all of the female employees. According to her allegations, Brennan was aware of Pfeiffer's habitual intoxication and abusive conduct, but negligently retained him as an employee with knowledge of his vicious disposition. She also alleges that she was wrongfully discharged from her employment in March 1983 in retaliation for her complaints against Pfeiffer.

Plaintiff Marlene Hogan alleges that she was employed as dining room manager and hostess at the Club, from February 1979 until 24 July 1983. On or about 22 June 1983, Hogan alleges that Pfeiffer began harassing her by shouting at her, using profanity, interfering with employees under her supervision, threatening her and throwing objects at her. Hogan further alleges that she complained to Clifford Smith, who succeeded Brennan as general manager of the Club, but that he refused to take any action to prevent or control Pfeiffer's abusive conduct. Her allega-

tions relating to defendant's negligence in retaining Pfeiffer are similar to Cornatzer's. Hogan also alleges that she was wrongfully terminated from her employment on 24 July 1983 in retaliation for her complaints against Pfeiffer.

Plaintiff Sonya Mitchell alleges that she was employed by the Club from 5 January 1980 until 10 July 1983. During the latter part of 1982, she became pregnant and, in April 1983, she requested of Brennan that she be allowed a leave of absence due to her pregnancy. Her request was denied. Thereafter, she alleges, Brennan began to harass her by requiring that she perform tasks which she was physically unable to do because of her pregnancy. On 10 July 1983 she alleges that she experienced labor pains and requested Brennan's permission to leave work to receive medical treatment. According to her complaint, Brennan refused to allow her to leave work, and when she left anyway, she was terminated. She claims damages for intentional infliction of emotional distress and for wrongful termination of her employment. Further, Mitchell alleges that Brennan was habitually intoxicated while at work, which contributed to his abusive behavior toward her and other female employees, and that defendant knew or should have known of his incompetence. She maintains that defendant was negligent in retaining Brennan as an employee and that, as a result, she suffered mental and emotional distress.

Defendant answered, asserting the failure of the plaintiffs to state claims upon which relief may be granted, and denying the material allegations of the complaint. Following discovery, defendant moved for summary judgment on all claims. Summary judgment was entered in favor of defendant dismissing all claims asserted by each plaintiff. Plaintiffs appeal.

*Kennedy, Kennedy, Kennedy and Kennedy, by Harvey L. Kennedy and Harold L. Kennedy, III, for plaintiff appellants.*

*Womble, Carlyle, Sandridge & Rice, by W. Andrew Copenhaver and M. Ann Anderson, for defendant appellee.*

MARTIN, Judge.

Plaintiffs assert error with respect to the entry of summary judgment dismissing each of their multiple claims. For the reasons which follow, we conclude that April Cornatzer is entitled to

a trial upon two of the three claims which she asserts. However, with respect to her claim for wrongful discharge from employment and to each of the claims of Marlene Hogan and Sonya Mitchell, we affirm the judgment of the trial court.

I

It is well settled that in ruling on a motion for summary judgment, a court does not resolve questions of fact but determines whether there exists any genuine issue of material fact. *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 209 S.E. 2d 795 (1974). In determining whether a genuine issue of material fact exists, the court must view all material furnished in support of and in opposition to the motion for summary judgment in the light most favorable to the party opposing the motion. *Bradshaw v. McElroy*, 62 N.C. App. 515, 302 S.E. 2d 908 (1983). Considering the facts in the light most favorable to the plaintiff, "a defending party is entitled to summary judgment if he can show that claimant cannot prove the existence of an essential element of his claim." *Dickens v. Puryear*, 302 N.C. 437, 453, 276 S.E. 2d 325, 335 (1981), *citing Best v. Perry*, 41 N.C. App. 107, 254 S.E. 2d 281 (1979). Where the pleadings and forecast of evidence demonstrate that no claim exists, as a matter of law, summary judgment is appropriate. *Kessing v. National Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971).

II

The first issue raised by each of the plaintiffs involves the entry of summary judgment dismissing her claim for intentional infliction of emotional distress. Each plaintiff contends that her forecast of evidence is sufficient to raise genuine issues of material fact with respect to her claim sufficient to survive summary judgment.

The tort of intentional infliction of mental or emotional distress was formally recognized in North Carolina by the decision of our Supreme Court in *Stanback v. Stanback*, 297 N.C. 181, 254 S.E. 2d 611 (1979). The claim exists "when a defendant's 'conduct exceeds all bounds usually tolerated by decent society' and the conduct 'causes mental distress of a very serious kind.' " *Id.* at 196, 254 S.E. 2d at 622, *quoting* Prosser, The Law of Torts, § 12, p. 56 (4th Ed. 1971). The elements of the tort consist of: (1)

extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress. *Dickens v. Puryear, supra.*

> The tort may also exist where defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress. Recovery may be had for the emotional distress so caused and for any other bodily harm which proximately results from the distress itself.

*Id.* at 452-53, 276 S.E. 2d at 335.

[1] Defendant contends that we should not reach the issue of whether the plaintiffs have successfully forecast evidence of a viable claim under the rules set forth in *Dickens*. It argues that even if the claims exist, they are barred by the exclusivity of remedies provision of the North Carolina Workers' Compensation Act, G.S. 97-10.1. This issue is one of first impression in this State; there is no case law dealing with the tort of intentional infliction of emotional distress in the context of an employer-employee relationship. We conclude that the Act does not bar plaintiffs' claims.

The Act defines injury as "injury by accident arising out of and in the course of the employment." G.S. 97-2(6). Our courts have applied this definition to cases involving assaultive conduct in an employer-employee relationship and have held that an employee is not barred by the Act from bringing a common law action *against a co-employee* for intentional conduct even though the reverse is true for negligent conduct on the part of the co-employee. *Andrews v. Peters*, 55 N.C. App. 124, 284 S.E. 2d 748 (1981), *disc. rev. denied*, 305 N.C. 395, 290 S.E. 2d 364 (1982). This Court has also held that the Act bars any common law action by an employee *against his employer* for the intentional conduct of a co-employee, unless the co-employee was acting as the alter ego of the employer. *Id.; Daniels v. Swofford*, 55 N.C. App. 555, 286 S.E. 2d 582 (1982). But the Act does not bar a common law action by an employee against his employer for the intentional conduct of the employer.

The intentional conduct involved in *Andrews* and *Daniels* was assaultive conduct for which damages were sought for physical injuries. In the present case, plaintiffs allege severe emotional

distress; they do not allege any physical or mental illness nor do they allege employment disability or loss of earning capacity resulting from their emotional distress. Therefore, we do not consider the holdings in *Andrews* and *Daniels* to be dispositive of our decision in this case.

The purpose of the Workers' Compensation Act is to furnish compensation for loss of earning capacity. *Wilhite v. Veneer Co.*, 47 N.C. App. 434, 267 S.E. 2d 566 (1980), *rev'd on other grounds*, 303 N.C. 281, 278 S.E. 2d 234 (1981). The Act defines disability as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury or in the same or any other employment." G.S. 97-2(9). In reference to the Act, this court has consistently held that "entitlement to compensation under the Workers' Compensation Act is rooted in and must be measured by plaintiff's capacity or incapacity to earn wages." *Mills v. J. P. Stevens & Co.*, 53 N.C. App. 341, 343, 280 S.E. 2d 802, 803, *disc. rev. denied*, 304 N.C. 196, 285 S.E. 2d 100 (1981). Therefore, in the present case, plaintiffs apparently have suffered damages which would be recoverable in a civil action but which are not compensable under the Act.

Plaintiffs' claims do not involve an isolated physical injury not compensable under the Act, rather they allege an entire class of civil wrongs which are outside the scope of the Act. With reference to non-physical injury torts, one commentator has stated that

> [w]hen no compensation is available, these tort actions fall squarely within the broad class of cases, . . . which do not come within the fundamental coverage pattern of the Act at all, as when certain occupational diseases which were excluded from the Act, or when the incident did not arise out of and in the course of employment.

2A Larson, The Law of Workmen's Compensation § 68.30 (1983). Larson further noted that

> [i]f the essence of the tort, in law, is non-physical, and if the injuries are of the usual non-physical sort, with physical injury being at most added to the list of injuries as a makeweight, the suit should not be barred. But if the essence of the action is recovery for physical injury or death, the action

should be barred even if it can be cast in the form of a normally non-physical tort.

*Id.* at § 68.34(a). The essence of the tort of intentional infliction of emotional distress is non-physical; the injuries alleged by plaintiffs do not involve physical injuries resulting in disability. Therefore, we conclude that plaintiffs' actions for intentional infliction of mental and emotional distress are not barred by G.S. 97-10.1.

### III

Having decided that the plaintiffs' actions are not barred by the provisions of the Workers' Compensation Act, we turn to an examination of the evidentiary materials submitted to the trial court. Because the forecast of evidence as to the factual basis of each plaintiff's claim is unique, each claim must be decided on its own merits.

### A

[2]  The evidence with respect to April Cornatzer's claim for intentional infliction of emotional distress, taken in the light most favorable to her, tends to show that in September 1982, Hans Pfeiffer began making sexual advances toward her. At her deposition, and in an affidavit, Cornatzer maintained that Pfeiffer made sexually suggestive remarks to her while she was working, coaxing her to have sex with him and telling her that he wanted to "take" her. He would brush up against her, rub his penis against her buttocks and touch her buttocks with his hands. When she refused his advances, he screamed profane names at her, threatened her with bodily injury, and on one occasion, advanced toward her with a knife and slammed it down on a table in front of her. As a result of Pfeiffer's actions toward her, Cornatzer maintains that she became very nervous, anxious, humiliated and depressed, to the extent that she was required to seek medical treatment for ulcers.

Defendant contends that, as a matter of law, the conduct directed toward Cornatzer by Pfeiffer was insufficiently outrageous to meet the requirement of *Dickens*. We disagree. It is a question of law for the court to determine, from the materials before it, whether the conduct complained of may reasonably be found to be sufficiently outrageous as to permit recovery. Re-

statement (Second) of Torts, § 46 comment (h) (1965). However, once conduct is shown which may be reasonably regarded as extreme and outrageous, it is for the jury to determine, upon proper instructions, whether the conduct complained of is, in fact, sufficiently extreme and outrageous to result in liability. *Id.*

That Cornatzer's forecast of evidence shows sufficiently outrageous conduct directed toward her by Pfeiffer to entitle her to go to the jury strikes us as irrefutable. No person should have to be subjected to non-consensual sexual touchings, constant suggestive remarks and on-going sexual harassment such as that testified to by Cornatzer, without being afforded remedial recourse through our legal system. Such conduct, if found by a jury to have actually existed, is beyond the "bounds usually tolerated by decent society" and would permit Cornatzer to recover, at least as against Pfeiffer.

Defendant argues further, however, that even if Pfeiffer would be liable, it should not be held liable for his intentional or wanton acts committed against Cornatzer because the acts were not committed for any purpose connected with the work he was employed to do. On the other hand, Cornatzer argues that defendant may be held liable for Pfeiffer's conduct under the doctrine of *respondeat superior*.

As a general rule, liability of a principal for the torts of his agent may arise in three situations: (1) when the agent's act is expressly authorized by the principal; (2) when the agent's act is committed within the scope of his employment and in furtherance of the principal's business; or (3) when the agent's act is ratified by the principal. *Snow v. DeButts*, 212 N.C. 120, 193 S.E. 224 (1937). There is no contention that defendant expressly authorized Pfeiffer's conduct; if defendant is to be held liable, there must be some evidence that Pfeiffer was acting within the scope of his employment or that defendant ratified his wrongful conduct.

It is well settled in this State that "[i]f the act of the employee was a means or method of doing that which he was employed to do, though the act be unlawful and unauthorized or even forbidden, the employer is liable for the resulting injury, but he is not liable if the employee departed, however briefly, from his duties in order to accomplish a purpose of his own, which purpose was not incidental to the work he was employed to do."

*Wegner v. Delicatessen*, 270 N.C. 62, 66-67, 153 S.E. 2d 804, 808 (1967). In *Overton v. Henderson*, 28 N.C. App. 699, 222 S.E. 2d 724 (1976), this Court stated that "[t]he principal is liable for the acts of his agent, whether malicious or negligent, and the employer for similar acts of his employees, . . . . The test is whether the act was done within the scope of his employment and in the prosecution and furtherance of the business which was given him to do." *Id.* at 701, 222 S.E. 2d at 726.

Although Pfeiffer's acts against Cornatzer were committed while both were at their jobs on defendant's premises, we can find no evidence, and Cornatzer points us to none, which would support a finding that Pfeiffer was acting within the scope of his employment or in the furtherance of any purpose of the defendant in committing the acts. Rather, it appears that he was acting in pursuit of some corrupt or lascivious purpose of his own.

However, we are constrained to hold that Cornatzer has presented a sufficient showing of ratification of Pfeiffer's conduct by defendant to warrant submission of the question to the jury. Cornatzer's evidence, considered in the light most favorable to her, indicates that she complained to Richard Brennan, defendant's general manager, several times concerning Pfeiffer's conduct and that Brennan did nothing to prevent further sexual harassment by Pfeiffer. "The designation 'manager' implies general power and permits a reasonable inference that he was vested with the general conduct and control of defendant's business . . . , and his acts are, when committed in the line of his duty and in the scope of his employment, those of the company." *Gillis v. Tea Co.*, 223 N.C. 470, 474, 27 S.E. 2d 283, 285 (1943), *quoting Kelly v. Shoe Co.*, 190 N.C. 406, 409, 130 S.E. 32, 34 (1925). Thus, Brennan, whose responsibilities as manager included his duty to oversee all aspects of defendant's business and to supervise defendant's employees, was vested with authority to act on behalf of defendant and if, by his actions, he ratified Pfeiffer's wrongful conduct, such ratification would be imputed to defendant. In order to show that the wrongful act of an employee has been ratified by his employer, it must be shown that the employer had knowledge of all material facts and circumstances relative to the wrongful act, and that the employer, by words or conduct, shows an intention to ratify the act. *See Equipment Co. v. Anders*, 265 N.C. 393, 144 S.E. 2d 252 (1965). Whether Brennan's

actions, consisting of retaining Pfeiffer in defendant's employ, declining to intervene to prevent his further offensive behavior toward Cornatzer, and ultimately terminating Cornatzer from employment, amount to a course of conduct signifying an intention to acquiesce in, approve and ratify Pfeiffer's acts is a question for the jury. For the foregoing reasons, we hold that summary judgment dismissing Cornatzer's claim for intentional infliction of mental distress was improvidently granted.

B

[3]   We do not reach the same result, however, with respect to the claims of Marlene Hogan and Sonya Mitchell for intentional infliction of mental distress. Hogan's evidence tends to show that Pfeiffer screamed and shouted at her, called her names, interfered with her supervision of waitresses under her charge, and on one occasion threw menus at her. She also testified that she shouted back at Pfeiffer. This conduct lasted during the period from 22 June 1983 until her termination on 24 July 1983. The general manager, Clifford Smith, received complaints from both Hogan and Pfeiffer concerning the temper of the other. His attempt to discuss the situation with both employees was unsuccessful because Pfeiffer walked out.

While we do not condone Pfeiffer's intemperate conduct, neither do we believe that his alleged acts "exceed all bounds usually tolerated by a decent society," *Stanback, supra,* so as to satisfy the first element of the tort, requiring a showing of "extreme and outrageous conduct." *Dickens, supra.*

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. . . .

> The liability clearly does not extend to mere insults, indignities, threats, . . . . The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate or unkind. There is no occasion for the law to intervene in every case

where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. . . .

Restatement (Second) of Torts, § 46 comment (d) (1965). We hold Pfeiffer's conduct, as shown by Hogan's forecast of evidence, was not such as to be reasonably regarded as "extreme and outrageous" so as to permit Hogan to recover for intentional infliction of mental distress.

[4]    Sonya Mitchell bases her claim for intentional infliction of emotional distress upon the alleged conduct and acts of Richard Brennan. Mitchell's evidence, if accepted as true by a jury, would show that Brennan refused to grant her a pregnancy leave of absence, directed her to carry objects such as trash bags, vacuum cleaners, and bundles of linen weighing more than 10 pounds. He cursed at her on one occasion. When she requested, on 10 July 1983, to be allowed to leave work to go to the hospital, Brennan refused to grant permission. When she left without his permission, he terminated her from employment.

We find that Brennan's alleged conduct, though unjustified under the circumstances apparent from Mitchell's testimony, was not so "extreme and outrageous" as to give rise to a claim for intentional infliction of mental or emotional distress.

IV

Plaintiffs also contend that summary judgment was improvidently granted against them on their claims against defendant for negligence in employing Pfeiffer and Brennan and in retaining them as employees with knowledge of their incompetence. Each plaintiff alleges mental distress and humiliation as a proximate result of defendant's negligence.

North Carolina recognizes the existence of a claim against an employer for negligence in employing or retaining an employee whose wrongful conduct injures another. In *Pleasants v. Barnes*, 221 N.C. 173, 19 S.E. 2d 627 (1942), our Supreme Court stated:

[B]efore responsibility for negligence of a servant, proximately causing injury to plaintiff, another servant, can be fixed on the master, it must be established by a greater weight of the

evidence, the burden being on the plaintiff, that he has been injured by reason of carelessness or negligence due to the incompetency of the fellow servant, and that the master has been negligent in employing or retaining such incompetent servant, after knowledge of the fact, either actual or constructive.

*Id.* at 177, 19 S.E. 2d at 629. The theory of liability is based on negligence, the employer being held to a standard of care that would have been exercised by ordinary, cautious and prudent employers under similar circumstances. *Lamb v. Littman,* 128 N.C. 361, 38 S.E. 911 (1901). However, before the employer can be held liable, plaintiff must prove that the incompetent employee committed a tortious act resulting in injury to plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency. *Pleasants, supra.*

### A

[5] Cornatzer's forecast of evidence is sufficient to maintain her claim that Pfeiffer, by sexually harassing her, committed the tort of intentional infliction of emotional distress proximately causing injury to her. Her evidence is also sufficient to permit a jury to find that defendant, through its general manager, Richard Brennan, who had the power to hire and discharge, retained Pfeiffer in a supervisory position after having actual notice of his proclivity to engage in sexually offensive conduct. Whether defendant's conduct amounts to a failure to exercise such care, in the employment and retention of Pfeiffer, as would have been exercised by a reasonable and prudent employer under similar circumstances is a question of material fact, properly for resolution by a jury. We note, however, that our recognition of this claim merely provides plaintiff Cornatzer a second theory, in addition to her first claim for relief, upon which she may seek to impose liability upon the Club for the intentional conduct of the chef. As stated in 53 Am. Jur. 2d,

> [t]he application of the theory of independent negligence in hiring or retaining an employee becomes important in cases where the act of the employee either was not, or may not have been, within the scope of his employment. In these cases such application allows the injured person to establish

liability on the part of the master where no liability would otherwise exist.

53 Am. Jur. 2d Master and Servant § 422 at 437 (1970).

[6] Defendant argues that plaintiff Cornatzer's claim for negligent retention of an employee is barred by the North Carolina Workers' Compensation Act. We hold to the contrary. Although the Act eliminated negligence as a basis of recovery against an employer, the Act covers only those injuries which arise out of and in the course of employment. *Horney v. Meredith Swimming Pool Co.*, 267 N.C. 521, 148 S.E. 2d 554 (1966); *Hoyle v. Isenhour Brick & Tile Co.*, 306 N.C. 248, 293 S.E. 2d 196 (1982). An injury arises out of the employment "when it is a natural and probable consequence or incident of the employment and a natural result of one of its risks, so there is some causal relation between the injury and the performance of some service of the employment." (Citation omitted.) *Robbins v. Nicholson*, 281 N.C. 234, 239, 188 S.E. 2d 350, 354 (1972).

The emotional injury allegedly suffered by Cornatzer, resulting from the chef's sexual harassment, is not, in our view, a "natural and probable consequence or incident of the employment." Sexual harassment is not a risk to which an employee is exposed because of the nature of the employment but is a risk to which the employee could be equally exposed outside the employment. *See Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 233 S.E. 2d 529 (1977). Therefore, Cornatzer's claim is neither covered nor barred by the Act. The entry of summary judgment dismissing Cornatzer's claim for negligence must be reversed.

B

[7] Neither Hogan nor Mitchell have any claim against defendant based upon negligence. Intentional infliction of emotional distress by Pfeiffer is the underlying tortious conduct relied upon by Hogan to establish her claim of negligence on the part of the Club in retaining him; a similar claim with respect to Brennan is relied on by Mitchell. We have already held that their evidence is insufficient to establish claims against defendant, Pfeiffer or Brennan for intentional infliction of emotional distress. Since the evidence is insufficient to establish that either Hogan or Mitchell has been injured by actionable tortious conduct of an employee of

defendant, neither of them may maintain an action against defendant based upon its negligence in employing or retaining the allegedly incompetent employee. 53 Am. Jur. 2d, *supra.*

## V

Finally, plaintiffs assign error to the entry of summary judgment dismissing their claims, based in tort, for wrongful discharge from employment. Each plaintiff contends that her discharge was retaliatory and in contravention of public policy. Defendant contends that because none of the plaintiffs were employed for a definite period, it had the right to terminate each of them at any time, regardless of its reason for doing so.

North Carolina adheres to the common law doctrine that employment contracts of indefinite duration are terminable at will. *Still v. Lance,* 279 N.C. 254, 182 S.E. 2d 403 (1971); *May v. Tidewater Power Co.,* 216 N.C. 439, 5 S.E. 2d 308 (1939); *Currier v. Lumber Co.,* 150 N.C. 694, 64 S.E. 763 (1909). "Where a contract of employment does not fix a definite term, it is terminable at the will of either party, with or without cause, except in those instances in which the employee is protected from discharge by statute." *Smith v. Ford Motor Co.,* 289 N.C. 71, 80, 221 S.E. 2d 282, 288, 79 A.L.R. 3d 651, 659 (1976). Recently, however, another panel of this Court recognized a limited exception to the terminable at will doctrine and permitted a claim for relief in tort for "retaliatory discharge" from employment. *Sides v. Duke Hospital,* 74 N.C. App. 331, 328 S.E. 2d 818, *disc. rev. denied,* 314 N.C. 331, 333 S.E. 2d 489 (1985).

In *Sides,* the plaintiff alleged that she was discharged from her employment as a nurse in retaliation for her refusal to testify falsely or incompletely in a civil action for medical malpractice in which her employer was a defendant. The Court noted that, according to her allegations, plaintiff was discharged in retaliation for her refusal to commit a criminal act and that to permit her discharge, without legal recourse, upon such grounds would be offensive to the compelling public interest in the administration of justice. "Thus, while there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy." *Id.* at 342, 328 S.E. 2d at 826. Though the *Sides* court spoke in the broad terms

of "public policy," its holding was actually very narrow. "We hold, therefore, that no employer in the State, notwithstanding that an employment is at will, has the right to discharge an employee . . . without civil liability because he refuses to testify untruthfully or incompletely in a court case . . . ." *Id.*

In *Walker v. Westinghouse Corp.*, 77 N.C. App. 253, 335 S.E. 2d 79 (1985), decided after *Sides*, plaintiff alleged, *inter alia*, that he had been discharged in retaliation for raising safety concerns. He contended that his discharge violated public policy as promulgated in G.S. 95-126, the Occupational Safety and Health Act of North Carolina. This Court affirmed summary judgment for defendant, stating, "[o]ur decision in *Sides* rested on facts clearly showing a wilful violation of the law and was consistent with other jurisdictions' insistence that the employer's conduct be in clear violation of express public policy to be actionable." *Id.* at 263, 335 S.E. 2d at 86. In *Trought v. Richardson*, 78 N.C. App. 758, 338 S.E. 2d 617 (1986), plaintiff alleged five separate claims for relief, one of which was that she was discharged for following the Nursing Practice Act and hospital policy in transferring two nurses from the emergency room. In affirming the dismissal of this claim, the Court noted the *Sides* case, but declined to include Trought's claim within its limited exception to the terminable at will rule.

The *Sides* court did not view its ruling as a departure from precedent. Plaintiffs, however, request that we "recognize and articulate a public policy exception" to the terminable at will doctrine. Mindful of our responsibility to follow precedent established by our Supreme Court, *Cannon v. Miller*, 313 N.C. 324, 327 S.E. 2d 888 (1985), we decline to do so. We are of the opinion that to recognize such an exception would be a significant departure from the terminable at will doctrine as it currently exists in North Carolina. We interpret *Sides* as recognizing a common law claim for relief in tort in favor of an employee at will who is discharged from his employment in retaliation for (1) his refusal to perform an act prohibited by law, or (2) his performance of an act required by law. Otherwise, under the clear language of *Smith v. Ford Motor Co.*, *supra*, an employee at will may be discharged, with or without cause, at anytime, unless his discharge is expressly prohibited by statute. *See* G.S. 95-81 and 95-83 (denial of employment by reason of labor union membership prohibited), G.S. 95-25.20 (discharge for filing Wage and Hour Act complaint

prohibited); G.S. 95-130(8) (discharge for filing OSHA complaint prohibited); G.S. 97-6.1 (discharge for filing Workers' Compensation claim prohibited).

[8] Considering the claims of each of the plaintiffs in light of the foregoing discussion, we are constrained to hold that summary judgment was appropriately entered against each of them. The forecast of evidence with respect to Cornatzer's claim tends to show that after she resisted Pfeiffer's advances, he became hostile toward her. However, Pfeiffer was neither her supervisor nor was he in a position to participate in personnel actions involving her. Cornatzer's evidence tends to show only that Pfeiffer manifested his hostility toward her by threatening Brennan with his own resignation as chef if Cornatzer was retained as an employee. When Brennan informed Cornatzer of her termination, he told her that "it has come to the point where I have to keep you or the chef. Right now the chef is more valuable to Forsyth Country Club than you are."

In our view, Cornatzer's forecast of evidence might well support an action against Pfeiffer for malicious interference with her terminable at will employment contract. See Smith v. Ford Motor Co., supra. She has alleged no such claim in this suit. Moreover, her assertions that Pfeiffer had harassed her sexually, that she had reported the harassment to Brennan and that he had impliedly condoned the harassment by taking no remedial measures, would appear sufficient to create a cognizable claim for damages under Title VII of the Civil Rights Act of 1964, §§ 701 et seq. as amended. 42 U.S.C.A. § 2000e et seq. See Katz v. Dole, 709 F. 2d 251 (4th Cir. 1983); Miller v. Bank of America, 600 F. 2d 211 (9th Cir. 1979). The claim which Cornatzer asserts in the present action, however, is one for tortious discharge from employment. There is no contention that her employment was protected by statute and we find no support in the evidence for her contention that defendant Forsyth Country Club terminated her employment in retaliation for her refusal to submit to Pfeiffer's sexual requests. While Pfeiffer's motives in threatening to quit if Cornatzer was not fired may well have been retaliatory, he was not in a position to, nor did he, fire her. She was terminated by the Club, through Brennan, in order to resolve an intolerable situation which had developed between two Club employees. While Brennan's decision as to how to resolve the problem appears, con-

sidering the evidence in a light favorable to Cornatzer, to have been a poor one, it does not give rise to a claim in tort for wrongful discharge from employment.

**[9]**  Although plaintiff Hogan made no claim that Pfeiffer harassed her sexually, she claims that he verbally abused her as well as other female employees. She contends that she was discharged in retaliation for her complaints about Pfeiffer and because of a pattern of discrimination against female employees by defendant. We observe that she, as well as Cornatzer, may well be entitled to assert a claim against Pfeiffer for malicious interference with her employment contract, as well as claims against Pfeiffer and the Club for discrimination based upon sex. However, neither her allegations nor the forecast of evidence at the summary judgment stage establish any right to relief in tort for wrongful discharge from employment. As an at will employee, she was subject to discharge at any time for any reason, so long as it was not unlawful.

With respect to plaintiff Mitchell, we reach the same conclusion. Her evidence tended to show that she was terminated after leaving work for medical treatment despite Brennan's demand that she remain at work. Although we sympathize with her situation and find the manager's reason for terminating her to be irrational, her firing was neither protected by statute nor for an unlawful purpose. While she may be entitled to assert a claim for gender-based employment discrimination, she has not attempted to do so in this case and her claim in tort for wrongful discharge from employment was properly dismissed by summary judgment.

VI

In conclusion, we reverse the entry of summary judgment dismissing April Cornatzer's claims against defendant for intentional infliction of mental distress and for negligence based upon its continued employment of Pfeiffer after knowledge of his tortious conduct committed against Cornatzer. Those claims are remanded for trial. Otherwise, the judgment of the trial court is affirmed.

Affirmed in part, reversed in part, and remanded.

Judges ARNOLD and WELLS concur.