Harry F. **HARDIN**, Plaintiff,

v.

**CHAMPION INTERNATIONAL CORPORATION**, Defendant.

No. A–C–86–341.

United States District Court,
W.D. North Carolina,
Asheville Division.

Nov. 25, 1987.

J. Patrick Whalen, Jr., Whalen, Hay, Wolcott, Pitts, Hugenschmidt & Master, Asheville, N.C., for plaintiff.

R. Lawrence Ashe, Jr., Weyman T. Johnson, Jr., Paul, Hastings, Janofsky & Walker, Atlanta, Ga., John S. Stevens, Gwynn G. Radeker, Roberts, Stevens & Cogburn, Asheville, N.C., for defendant.

DUPREE, District Judge.

In this age discrimination case brought by Harry F. Hardin against his employer, Champion International Corporation, pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 (ADEA) plaintiff seeks damages caused by his demotion in violation of the Act and reinstatement to his former position. In a second cause of action plaintiff seeks damages for intentional infliction of emotional distress under North Carolina state law. The action is before the court on defendant's motion for summary judgment which has been thoroughly briefed and argued by the parties. For the reasons to follow the motion will be allowed.

Hardin was employed by Champion in 1946 and has been continuously employed since that time at the company's mill in Canton, North Carolina. Starting as an apprentice in Champion's mechanical department, Hardin worked his way up to the position of millwright, and since 1963 he has worked in defendant's maintenance and engineering department. In 1984 Hardin was promoted to superintendent of field maintenance and construction. At that time he was told that this assignment would probably be temporary.

Sensing that the maintenance effectiveness of the mill was unsatisfactory, in late summer and early fall of 1985 the company's director of maintenance, one Phillip Luzier, was brought in to make an audit of the maintenance and engineering department at the Canton mill. A comparison of the operation of the maintenance system at Canton with other mills in the Champion company revealed it to be substandard. The result was that Luzier recommended reorganization of the Canton engineering and maintenance department. A new organizational chart implementing Luzier's recommendation included elimination of the position held by Hardin as superintendent of field maintenance and construction and the creation of a new position of superintendent of maintenance. This new position

was to have broader responsibilities than the one filled by Hardin, including supervision of electrical and instrumentation functions as well as supervision of work control and planning.

At that time Champion's management concluded that no one at the Canton mill possessed the necessary education, experience and ability to fill this new position of superintendent of maintenance. It was felt that Hardin was not qualified for the position because he lacked education, training and experience in the electrical and instrumentation fields. The decision was then made to bring in one Keith Waddell from another Champion plant to fill the new position. Waddell, who was forty years of age, held an engineering degree from North Carolina State University and had had substantial experience with Champion in the maintenance of instrumentation and electrical controls as well as in work control planning.

Around the first of March of 1986 plaintiff met with Oliver Blackwell, vice president and operations manager of the Canton mill, and Jim Landers, manager of the engineering and maintenance department of the mill, to discuss Hardin's future employment in view of the elimination of his position pursuant to the restructuring of the maintenance department. Plaintiff had previously expressed an interest in early retirement, and this was discussed. He was told, however, that he was not required to retire. At this meeting plaintiff had concealed in his jacket a tape recorder which he used to secretly record the discussions.

At a further discussion with Champion's management on May 14, 1986 he was told that because of the reorganization of the maintenance department he would be reassigned to a foreman position. Although this was a two-step lower level position than the one he had previously held, Har-

din's compensation was not decreased and he has received periodic raises since that time. Shortly thereafter he was reassigned at his own request to another area of the plant where he assumed his current position of shift repair foreman.[1]

At the time of his reassignment Hardin was fifty-nine years of age, and he filed an age discrimination charge with the Equal Employment Opportunity Commission on May 8, 1986. Following its investigation of Hardin's charge the EEOC found no merit in it, and this action was filed by Hardin against Champion on December 31, 1986.

The announcement of the adoption of the new organization plan for the Canton Mill's maintenance department and Hardin's reassignment to a lesser position was made in the presence of a number of company officials and affected employees, but with respect to Hardin's reassignment no harsh or insulting language was used. Hardin, of course, strongly disagreed with the decision to reassign him, but in his deposition he admitted that management had never treated him or talked to him in a way that was less than courteous, dignified and respectful. Hardin contends, nevertheless, that he was greatly humiliated by this demotion in the presence of his peers, and this forms the basis for his second cause of action based on intentional infliction of emotional distress.

With one exception the foregoing statement of the facts in this case is not seriously disputed by the plaintiff.[2]

The only direct evidence of age discrimination cited and relied upon by the plaintiff lies in his construction of what transpired in February of 1986 when he was informed by Oliver Blackwell of the impending implementation of the reorganization plan which Luzier had recommended. At that time plaintiff contends that Blackwell stated that Hardin was "an old-timer," who "had had his legs switched before," "had

---

1. Hardin was reprimanded for having secretly recorded the prior conversation, an act which Blackwell considered a serious breach of trust.

2. Plaintiff contends that he was indeed as well qualified as Waddell to fill the new position of superintendent of maintenance, but it is well

settled in this circuit that the perception of an employee himself is not relevant. The question is whether the company made an informed decision to fill the new position with someone of substantially better qualifications. *Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir.1980).

been around a long time," and "he [Hardin] wouldn't mind being stepped back." Considered in the light of the fact that Hardin was only about sixteen months older than Blackwell and that both belonged to an organization of senior and retired Champion employees known as "The Old Timers", the court considers this incident to afford too slender a reed upon which to found a case of age discrimination requiring its submission to a jury. Assuming that Blackwell made these remarks, it would be pure speculation to say what he meant by them. Even Hardin himself testified at his deposition that he did not know what Blackwell meant by these comments.

■ Under the indirect or inferential method of proof outlined in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), it is incumbent upon the plaintiff in an age discrimination case involving demotion to show that (1) he was in the protected age group; (2) he was demoted; (3) at the time of his demotion he was performing his job at a level that met his employer's legitimate expectations; and (4) following his demotion he was replaced by someone of comparable qualifications outside the protected class. *EEOC v. Western Electric Corporation*, 713 F.2d 1011, 1014 (4th Cir. 1983).

In the case at bar ADEA coverage and unfavorable employment action are not disputed. Nor is it questioned that he was satisfactorily performing his job at the time of his reassignment. The question, then, is whether Hardin was "replaced" by Waddell and whether his qualifications for the newly created position of superintendent of maintenance were comparable to those of Waddell. Plaintiff's case fails on both scores.

■ In the first place plaintiff was not "replaced" by Waddell, for it is undisputed that the new position which Waddell occupies carries substantially greater responsibilities than those which plaintiff had in his previous position. As superintendent of maintenance Waddell is responsible for supervising the work control section as well as the electrical and instrumentation func-tions of the engineering and maintenance department. Under the prior organizational structure of the department, the superintendent of electrical and instrument and the superintendent of work control reported directly to the department manager. Under the reorganization plan adopted the position of superintendent of work control was eliminated just as was Hardin's position. Further undisputed evidence in the record shows that Waddell's position carries many responsibilities which were not included in those discharged by Hardin in his former position.

As previously stated, Waddell holds a B.S. degree in mechanical engineering from North Carolina State University where he studied metallurgy and electrical engineering. Before coming with Champion he held several positions involving maintenance of instrumentation and electrical controls in another paper company and was responsible for overseeing the design and installation of electrical and instrumentation equipment. Following his employment by Champion Waddell also had extensive electrical and instrumentation experience and was involved in establishing maintenance programs related to electrical and instrumentation functions of the Canton mill.

The plaintiff Hardin, on the other hand, has had no formal education since high school, has had virtually no education or experience in the electrical and instrumentation area or in the area of work control and planning and has had no experience in the electrical and instrumentation or work control areas during all the years he has been employed by Champion. His qualifications simply do not measure up to those of Waddell and are clearly insufficient to meet the demands of the position of superintendent of maintenance which Waddell now fills.

In this respect the case is strikingly like another case which arose in this district, *English v. Pabst Brewing Company*, 645 F.Supp. 186 (W.D.N.C.1986). In that case Judge Sentelle granted summary judgment to the defendant, holding that a discharged salesman who lacked education and experience comparable to his younger replace-

ment, was not "qualified" for the position. Just over a month ago this decision was affirmed on appeal. *English v. Pabst Brewing Company*, 828 F.2d 1047 (4th Cir. 1987).

Even if plaintiff's evidence were sufficient to create a prima facie case of age discrimination, it would still not suffice to withstand summary judgment. This is so because defendant has articulated legitimate, non-discriminatory reasons for its actions, and plaintiff's evidence fails to create a genuine issue of material fact on the question of pretext.

> The presumption or inference arising from proof of a prima facie case dissolves in the ADEA case upon evidence adduced by the defendant of a legitimate, non-discriminatory reason for its action.

*Fink v. Western Electric Company*, 708 F.2d 909, 915 (4th Cir.1983).

The evidence here is undisputed that the legitimate, non-discriminatory reason why plaintiff was demoted was that his position was eliminated pursuant to a major restructuring of the defendant's maintenance and engineering department and that this was done by defendant to improve the efficiency of its maintenance operations. Plaintiff is correct in his assertion that he need not show that discrimination was the only motivating reason for defendant's challenged action. He need only show that it was a substantial or motivating factor in the adverse employment decision, not the sole reason. *Smith v. University of North Carolina*, 632 F.2d 316, 337 (4th Cir.1980). It would be fanciful to assume, however, that the long period of study which preceded the defendant's restructuring operation which resulted in the elaborate reorganization plan had anything at all to do with this particular plaintiff's age. Many other employees were affected by the changes made, and while it is not questioned that plaintiff suffered a demotion (part of which was attributable to his surreptitious tape recording of his meeting with Blackwell),

at this time he has sustained no loss of salary or bonus, and there is nothing in the record to indicate that he is not still regarded as a valued employee by the defendant.[3] There is simply no evidence to support plaintiff's contention that defendant's actions were pretextual.

Plaintiff's cause of action based on intentional infliction of emotional distress must also fail. Recognition of such a cause of action is relatively new in North Carolina. *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611 (1979). North Carolina follows the definition of this tort as set forth in the Restatement (Second) of Torts § 46, Comment d (1965):

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Under this definition it is a question of law for the court to determine whether or not a jury could reasonably find the defendant's alleged conduct to have been "outrageous." *Hogan v. Forsyth Country Club Company*, 79 N.C.App. 483, 340 S.E. 2d 116, 121, *review denied*, 317 N.C. 334, 346 S.E.2d 140 (1986).

Plaintiff's claim is based on his "precipitous demotion from superintendent over 300 men to leader of an eight-man crew and the public humiliation staged by the company ... not the language used to ef-

---

**3.** Plaintiff's monetary damages, if any, would appear to be limited to his loss of certain stock option privileges which are not available to him in his new position. Plaintiff's standing to maintain the action is also predicated upon his alleged right to the equitable relief of reinstatement to his former position.

fect that humiliation." (Plaintiff's Brief at p. 20.) While it is certainly understandable that plaintiff was disappointed, embarrassed and perhaps even humiliated by his reassignment to a position of less dignity than the one he had previously held, by his own admission only normal business language was used in making the announcement to those assembled that plaintiff along with others was being reassigned to a new position.

Q: Other than making the decision with which you disagree to put you into a different job, has any member of management ever treated you or talked to you in a way that was less than courteous, dignified and respectful?

A: Not to my recollection.

Q: And would it be fair to state that it was the decision to reassign you that you disagree with, not the manner in which it was communicated?

A: Right, yes.

Hardin Deposition, pp. 60–62.

In the court's view the conduct of defendant's management in this episode could not reasonably be found by a jury to have been "outrageous" within the definition of intentional infliction of emotional distress as set forth in the quoted portion of the Restatement and adopted by the Supreme Court of North Carolina, and plaintiff's second cause of action must also fail.

In summary, the plaintiff has not produced evidence sufficient to create a genuine issue of material fact as to either of his causes of action, and defendant's motion for summary judgment must therefore be sustained.

In accordance with this ruling a judgment of dismissal will be entered.