SARAH JOAN WATSON, Plaintiff v. BOBBY DIXON and DUKE UNIVERSITY, Defendants

No. COA97-638

(Filed 7 July 1998)

**1. Appeal and Error— notice of appeal—beginning of thirty-day time period**

An appeal was timely filed where plaintiff argued that the thirty-day time limit began to run after defendant's oral motions for JNOV or a new trial were denied, but those motions were not properly before the trial court as post-trial motions under N.C.G.S. § 1A-1, Rules 50 and 59. Defendants filed notice of appeal well within the thirty-day period following the denial of subsequent properly filed motions.

**2. Emotional Distress— employment harassment—judgment nov**

The trial court did not err by denying defendants' motion for judgment NOV on a claim for intentional infliction of emotional distress against a Duke University employee arising from employment harassment where defendants contended only that the extreme and outrageous element of plaintiff's claim was not met. Viewing the evidence in the light most favorable to plaintiff, the evidence tends to show that defendant Dixon began to harass Watson approximately one month from the date she began work; he frightened and humiliated her with cruel practical jokes, which escalated to obscene comments and behavior of a sexual nature, which then escalated to unwanted touching of her person, finally culminating in veiled threats to her personal safety; this

behavior continued virtually unchecked for some seven or eight months; several of her coworkers testified that plaintiff appeared emotionally upset while at work; and plaintiff eventually suffered a nervous breakdown.

**3. Emotional Distress— employment harassment—ratification by employer**

The trial court correctly denied defendants' motions for JNOV regarding the issue of Duke's ratification of defendant Dixon's behavior in an action for intentional infliction of emotional distress arising from employment harassment. There was ample evidence tending to show that Duke ratified the conduct of Dixon through its failure to act after it knew facts which would have led a person of ordinary prudence to investigate and remedy the conduct.

**4. Damages and Remedies— punitive damages—employment harassment—vicarous liability by employer—relationship to award against employee**

The trial court erred in an action for intentional infliction of emotional distress arising from employment harassment by denying defendant's motion for JNOV or remittitur as to the punitive damage award where the employer's liability was solely based on ratification and the jury awarded punitive damages against the employer in excess of the punitive damages award against the employee.

Appeal by defendants from order entered 15 November 1996 by Judge A. Leon Stanback, Jr. in Durham County Superior Court. Heard in the Court of Appeals 15 January 1998.

*Glenn, Mills & Fisher, P.A., by Stewart W. Fisher, for plaintiff-appellee.*

*Ogletree, Deakins, Nash, Smoak & Stewart, P.C., by Keith E. Coltrain, Guy F. Driver, Jr., and Jonathan R. Mook, for defendants-appellants.*

TIMMONS-GOODSON, Judge.

Plaintiff Sarah Joan Watson initiated this action against defendants Bobby Dixon (Dixon) and Duke University (Duke) on 22 October 1992, alleging claims for intentional infliction of emotional distress, negligent infliction of emotional distress, negligent hiring, negligent

WATSON v. DIXON

[130 N.C. App. 47 (1998)]

retention and assault. By order dated 18 July 1995, Judge James C. Spencer, Jr. dismissed plaintiff's claims against Duke for assault, negligent infliction of emotional distress, and negligent hiring, as well as plaintiff's claim against Dixon for negligent infliction of emotional distress. Plaintiff's remaining claims against Duke for intentional infliction of emotional distress and negligent retention, and against Dixon for assault and intentional infliction of emotional distress, were tried before Judge A. Leon Stanback, Jr. and a duly empaneled jury during the 23 September civil session of Durham County Superior Court.

The evidence tended to show that Watson and Dixon were both employed with Duke in the Sterile Processing Department of the Medical Center, when Watson began to experience difficulty with Dixon's harassing behavior. His behavior consisted of crank telephone calls, rubbing his body against Watson, touching her breasts, confining Watson to a room against her will, drawing a picture of her body depicting it with a penis, making obscene comments about her, scaring Watson in an area where rapes had occurred, and making scary comments about her long drive home on dark roadways. This conduct occurred during a period of seven or eight months (from approximately August 1991 to late March 1992), during which plaintiff experienced bouts of crying, vomiting, and inability to sleep, until finally suffering a nervous breakdown. Watson has been treated for almost two years by Dr. Bonny Gregory, a psychiatrist, who has diagnosed her with depression and post-traumatic stress disorder. Prior to her employment with Duke, Watson had experienced a number of stressors in her personal life—the suicide of her father, placement in an orphanage as a child, abuse by her mother, attempted molestation by an uncle, triple bypass surgery at the age of twenty-six, and periodic treatment for mild depression.

Although no one has ever taken any serious disciplinary action against him, Dixon had a reputation among the Sterile Processing Department management as one who joked and played around a lot, and intimidated new employees. Watson reported Dixon's behavior to her supervisor, Eunice Haskins-Turrentine, the Assistant Director of the Sterile Processing Department, Vickie Barnette, and later to an Employee Relations Representative, Oscar Rouse. Oscar Rouse then wrote a letter to Celenzy Chavis, who regularly dealt with employee relations in the Sterile Processing Department, but who had been out of the office when Watson went to the Employee Relations Department. Watson, fearing for her personal safety, also reported

WATSON v. DIXON

[130 N.C. App. 47 (1998)]

Dixon's activities to Duke Police Officer Sarah Minnis, who made a written report.

Duke did not take any action against Dixon until about 20 March 1992, when Bill Dennis, Director of Material Management, spoke with Dixon about his reported behavior, and consequently, separated Watson and Dixon in the work environment. Watson was thereafter transferred to first shift, a new and low stress position. After less than a week in her new position, Watson went out of work on leave and did not return to work until 1 June 1992, and worked part-time until mid-July 1992, when she returned to work full-time. Watson and Dixon both were still employed with Duke at the time of trial. At the close of plaintiff's evidence, defendants made a motion for directed verdict, which was denied. Defendants, therefore, proceeded with a presentation of their evidence.

During defendants' case in chief, Dixon contended that he had not intentionally harassed Watson, and Duke maintained that the university had responded as well as possible in light of the circumstances. Many of Duke's personnel denied receiving reports of Dixon's behavior, or they testified that Watson told them that she wanted to keep her complaints confidential. Defendants, again, moved for directed verdict, and that motion was also denied.

By a verdict returned on 10 October 1996, the jury determined that Dixon was not liable for an assault on Watson, and that Duke was not liable for the negligent retention of Dixon. The jury did find, however, (1) that Dixon was liable for the battery of Watson and awarded her $100 in compensatory damages; and (2) that Dixon was liable for intentional infliction of emotional distress and that Duke had ratified Dixon's actions in inflicting this emotional distress, and awarded Watson compensatory damages in the amount of $100,000, and punitive damages in the amount of $5,000 from Dixon and $500,000 from Duke. Judge Stanback entered a written judgment on the jury's verdict on 21 October 1996.

Defendants made oral motions for judgment notwithstanding the verdict (j.n.o.v.) or, in the alternative, for a new trial. Defendants then stated that they would renew their oral motions with written motions. Without hearing further argument from counsel, Judge Stanback responded, "at this time, those motions will be denied." On 28 October 1996, defendants filed written motions for j.n.o.v. or, in the alternative, for a new trial, or in the alternative, for a remittitur as to damages. These motions were heard on 7 November 1996, and by

order entered 15 November 1996, Judge Stanback denied defendants' motions. Defendants filed notice of appeal with this Court on 10 December 1996.

**[1]** At the outset, we note that plaintiff has filed a motion to dismiss defendants' appeal as untimely filed. In this motion, plaintiff argues that the 30-day time limit in which defendants had to file notice of appeal began to run after defendants' oral motions for j.n.o.v., or in the alternative, for a new trial, were denied. This argument, however, fails, because Rules 50 and 59 of our Rules of Civil Procedure implicitly provide that these post-trial motions cannot be filed until after entry of judgment. *See* N.C.R. Civ. P. 50, 59. Further, entry of judgment cannot occur until after it is reduced to writing, signed by the judge, and filed with the clerk of court. N.C.R. Civ. P. 58. Thus, these motions were not properly before the trial court as post-trial motions under Rules 50 and 59. The properly filed motions of 28 October 1996, then, tolled the time for filing notice of appeal, *see* N.C.R. App. P. 3(c); and entry of order denying these motions on 15 November 1996, served to begin the 30-day time period within which defendants could file notice of appeal. As defendants did file notice of appeal on 10 December 1996—well within the 30-day time period for noticing appeal, this appeal was timely filed, and accordingly, plaintiff's motion to dismiss is denied.

On appeal, defendants bring forth only four of their nine assignments of error, arguing against the sufficiency of the evidence on the issues of (1) plaintiff's claim of intentional infliction of emotional distress against Dixon to the jury; (2) Duke's ratification of Watson's behavior; and (3) the punitive damage award. All other assignments of error are deemed abandoned. N.C.R. App. P. 28(b)(5). For the reasons discussed herein, defendants' arguments regarding the insufficiency of the evidence against Dixon for intentional infliction of emotional distress and against Duke for ratification fail. Defendants' final argument that the punitive damage award is defective has merit.

**[2]** First, we address defendants' argument that the trial court erred in denying their motion for j.n.o.v. because Watson failed to produce sufficient evidence to justify submitting to the jury her claim against Dixon for intentional infliction of emotional distress. This Court's review of a motion for a directed verdict is essentially the same as one for j.n.o.v. *Lassiter v. English*, 126 N.C. App. 489, 493, 485 S.E.2d 840, 842, *disc. review denied*, 347 N.C. 137, 492 S.E.2d 22 (1997). Both

WATSON v. DIXON

[130 N.C. App. 47 (1998)]

motions test the sufficiency of the evidence presented at trial, the first after the plaintiff's case in chief, and the later after the jury's decision. *Bryant v. Thalhimer Brothers Inc.*, 113 N.C. App. 1, 6, 437 S.E.2d 519, 522 (1993). Additionally, both motions may be granted if " 'the evidence so clearly establishes the fact in issue that no reasonable inferences to the contrary can be drawn' and if the credibility of the movant's evidence is manifest as a matter of law." *Lassiter*, 126 N.C. App. at 493, 485 S.E.2d at 842-43 (quoting *North Carolina Nat'l Bank v. Burnette*, 297 N.C. 524, 536-37, 256 S.E.2d 388, 395 (1979)). In assessing the propriety of both motions, we must take the plaintiff's evidence as true, and view all of the evidence in the light most favorable to him/her, giving him/her "the benefit of every reasonable inference which may be legitimately drawn therefrom, with conflicts, contradictions, and inconsistencies being resolved in the plaintiff's favor." *Bryant*, 113 N.C. App. at 6, 437 S.E.2d at 522 (citing *Hornby v. Pennsylvania Nat'l Mut. Casualty Ins. Co.*, 62 N.C. App. 419, 303 S.E.2d 332, *disc. review denied*, 309 N.C. 461, 307 S.E.2d 364 (1983)).

A claim for intentional infliction of emotional distress exists "when a defendant's 'conduct exceeds all bounds usually tolerated by decent society' and the conduct 'causes mental distress of a very serious kind.' " *Stanback v. Stanback*, 297 N.C. 181, 196, 254 S.E.2d 611, 622 (1979) (quoting Prosser, The Law of Torts, § 12, p.56 (4th ed. 1971)), *quoted in Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 487, 340 S.E.2d 116, 119, *disc. review denied*, 317 N.C. 334, 346 S.E.2d 140 (1986). In order to make out a prima facie showing for intentional infliction of emotional distress, the plaintiff must show the following: (1) that defendant engaged in extreme and outrageous conduct, (2) which was intended to cause and did cause (3) severe emotional distress. *Bryant*, 113 N.C. App. at 6-7, 437 S.E.2d at 522 (citing *Hogan*, 79 N.C. App. 483, 340 S.E.2d 116). "The tort may also exist where defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress." *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981).

Defendants contend only that the "extreme and outrageous" element of plaintiff's intentional infliction of emotional distress claim is not met; they make no argument as to the other elements of plaintiff's claim. As adequate evidence of the intent and damages elements exist for this claim, we address only defendants' argument that Dixon's behavior was not so outrageous as to exceed the bounds tolerated by decent society.

Viewing the evidence in the light most favorable to Watson, and taking that evidence as true, the evidence tends to show that Dixon began to harass Watson approximately one month from the date she started work in the Sterile Processing Department at Duke Medical Center. Dixon frightened and humiliated Watson with cruel practical jokes, which escalated to obscene comments and behavior of a sexual nature, which then escalated to unwanted touching of her person, until finally culminating in veiled threats to her personal safety. This behavior continued virtually unchecked for some seven or eight months. In fact, several of her co-workers testified that Watson appeared emotionally upset while at work. Eventually, Watson suffered a nervous breakdown.

Looking at all of the facts and attenuating circumstances, including the type of conduct engaged in and the length of time that the conduct continued, we conclude that Dixon's behavior does indeed meet the requirement for "extreme and outrageous behavior." *See Denning-Boyles v. WCES, Inc.*, 123 N.C. App. 409, 473 S.E.2d 38 (1996); *Brown v. Burlington Industries, Inc.*, 93 N.C. App. 431, 378 S.E.2d 232 (1989), *disc. review improvidently allowed*, 326 N.C. 356, 388 S.E.2d 769 (1990); *Hogan*, 79 N.C. App. 483, 340 S.E.2d 116.

[3] We proceed to defendants' next argument that the trial court erred in denying their motion for j.n.o.v. because Watson failed to produce sufficient evidence to warrant submitting to the jury her claim of ratification by Duke. A principal/employer may be held liable for the torts of its agent/employee if the agent's act is ratified by the principal/employer. *Hogan*, 79 N.C. App. at 492, 340 S.E.2d at 122. In order to prove ratification, the plaintiff must establish that the "employer had knowledge of all material facts and circumstances relative to the wrongful act, and that the employer, by words or conduct, show[ed] an intention to ratify the act." *Brown*, 93 N.C. App. at 437, 378 S.E.2d at 236 (quoting *Hogan*, 79 N.C. App. at 492, 340 S.E.2d at 122). Moreover, "[i]f the purported principal is shown to have knowledge of facts which would lead a person of ordinary prudence to investigate further, and he fails to make such investigation, his affirmance without qualification is evidence that he is willing to ratify upon the knowledge which he has." *Denning-Boyles*, 123 N.C. App. at 415, 473 S.E.2d at 42 (citing Restatement (Second) of Agency § 91, Comment e, p. 235 (1958)). Ratification can be shown by any course of conduct which reasonably tends to show an intention on the part of the principal/employer "to ratify the agent's unauthorized acts." *Brown*, 93 N.C. App. at 437, 378 S.E.2d at 236 (citing *Carolina Equip.*

*Co. v. Anders*, 265 N.C. 393, 144 S.E.2d 252 (1965)). This course of conduct may include a failure to act after being apprized of the material facts and circumstances to the wrongful conduct. *Id.*

Again, viewing the evidence in the light most favorable to Watson, and accepting all of that evidence as true, the facts in the case *sub judice* tend to show that the management of the Sterile Processing Department knew of Dixon's propensity to intimidate new employees. Further, Watson first told her supervisor, Ms. Haskins-Turrentine, of Dixon's prank telephone calls, but was rebuffed with laughter. Next, Watson reported Dixon's behavior to the Assistant Director of Sterile Processing, Ms. Barnette, who promised that she was going to "take care of" the situation, but nothing was ever said to Dixon. Ms. Barnette questioned Watson about her racial attitudes. When the pranks continued, Watson again complained to Ms. Haskins-Turrentine, who responded with laughter and the comment that "Bobby is just a kid." Thereafter, Watson was admonished by Ms. Haskins-Turrentine, for dress code violations. When Watson complained to Ms. Barnette that Ms. Haskins-Turrentine was retaliating against her for the reports of Dixon's behavior, Ms. Barnette told Watson to keep her mouth shut. After Dixon attempted to expose himself to her and confined her to a room against her will, grabbing her by the chest and picking her up, Watson went to the Employee Relations Department. Her complaints were forwarded to an Employee Relations Representative, Celenzy Chavis, who failed to contact Dixon about his behavior—ostensibly because of Watson's desire to keep her complaints confidential. After being frightened by Dixon in the parking deck, as well as other indignities, Watson filed a report with Duke Police Officer Sarah Minnis. Officer Minnis approached management in the Sterile Processing Department about Watson's complaint, only to find that they were already aware of Dixon's propensity to intimidate new employees. It was not until Officer Minnis met with Bill Dennis, Director of Materials Management, and told him of Watson's complaint that some official action was taken to stop Dixon's harassment of Watson. Some seven or eight months after Dixon started his harassment of Watson, Dennis met with Dixon and told him about Watson's complaint, and subsequently, separated the two at work. Defendants' arguments that the persons to whom Watson complained were not the proper people, or had no authority to fire Dixon, are unpersuasive. The uncontroverted evidence tends to show that Watson followed written policy in reporting Dixon's harassment, but that Duke failed to follow such policy in dealing with Dixon's behavior.

The facts as set forth present ample evidence which tends to show that Duke ratified the conduct of Dixon through its failure to act after it knew facts which would have led a person of ordinary prudence to investigate and remedy the conduct. We, therefore, conclude that the trial court correctly denied defendants' motions for j.n.o.v. in regards to the issue of Duke's ratification of Dixon's behavior. Defendants' arguments to the contrary fail.

[4] Finally, we address defendants' argument that the trial court erred in denying their motion for j.n.o.v. or, in the alternative, for remittitur as to the jury's punitive damage award. This argument, however, fails.

Defendants contend that the evidence did not support an award of punitive damages because plaintiff failed to offer evidence of "additional" factors. Generally, " '[p]unitive damages are recoverable in tort actions only where there are aggravating factors surrounding the commission of the tort such as actual malice, oppression, gross and wilful wrong, insult, indignity, or reckless or wanton disregard of plaintiff's rights.' " *Brown*, 93 N.C. App. at 438, 378 S.E.2d at 236 (quoting *Burns v. Forsyth Co. Hospital Authority*, 81 N.C. App. 556, 561, 344 S.E.2d 839, 844 (1986)). Punitive damages "are not recoverable as a matter of right in any case," but are only awarded "in the discretion of the jury when the evidence warrants." *Id.* (quoting *Hunt v. Hunt*, 86 N.C. App. 323, 327, 357 S.E.2d 444, 447, *aff'd*, 321 N.C. 294, 362 S.E.2d 161 (1987)).

As plaintiff has offered plenary evidence to establish a prima facie claim of intentional infliction of emotional distress, one of the constituent elements of such a claim being "extreme and outrageous" conduct by defendant or a third party which is then imputed to defendant, the necessary aggravating factor is present to support an instruction on the issue of punitive damages to the jury. *Id.* at 438, 378 S.E.2d at 236-37. However, we cannot ignore the mandate of *stare decisis*. It is well settled that "when an employer's liability is solely derivative under a theory of vicarious liability, such as respondeat superior or ratification, the liability of the employer cannot exceed the liability of the employee." *Poole v. Copland Inc.*, 125 N.C. App. 235, 481 S.E.2d 88, 95 (1997), *rev'd and remanded on other grounds*, 498 S.E.2d 602 (1998); *see also Thompson v. Lassiter*, 246 N.C. 34, 38, 97 S.E.2d 492, 496 (1957); *Pinnix v. Griffin*, 221 N.C. 348, 20 S.E.2d 366 (1942).

In the instant case, while there is direct evidence to support punitive damages against Dixon and Duke, the fact remains that the jury

found Duke not liable for negligent retention. Duke's liability is based solely on a jury determination that Duke ratified the actions of its employee, Bobby Dixon. Accordingly, the jury award of punitive damages against Duke for $500,000, in excess of punitive damages against Dixon, cannot stand. We, therefore, reverse the judgment of the trial court as to the punitive damage award, as being contrary to the law, and remand the matter to the trial court for a trial on the issue of punitive damages against defendants.

In conclusion, we hold that the trial court properly entered judgment on plaintiff's claims against Dixon for intentional infliction of emotional distress and against Duke for ratification. We hold, however, that this case must be remanded for determination of the amount of punitive damages to be awarded against Dixon and Duke.

Affirmed in part, and reversed and remanded in part.

Judges LEWIS and McGEE concur.