Yolanda COX; Janine Dalrymple; Marie Hogsed; and Phyllis Stalcup, for themselves and all others similarly situated, Plaintiffs,

v.

INDIAN HEAD INDUSTRIES, INC., a Delaware Corporation; MGM Brakes, a division of Indian Head Industries, Inc.; and Franklin Barnett, Defendants.

No. 2:98CV175.

United States District Court, W.D. North Carolina, Bryson City Division.

May 20, 1999.

**532**

David C. Pishko, J. Griffin Morgan, Elliott, Pishko, Gelbin & Morgan, Winston–Salem, NC, for plaintiff/petitioner.

Philip M. Van Hoy, Stephen J. Dunn, Van Hoy, Reutlinger & Taylor and Kimberly A. Lyda, Robert B. Long, Jr., Long, Parker & Warren, P.A., Asheville, NC, for defendant/respondent.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Plaintiffs' motion for class certification which is opposed by the defendants. In addition, Defendant Barnett has filed timely objections to the Memorandum and Recommendation of United States Magistrate Judge Max O. Cogburn, Jr. Both matters are addressed.

### I. PROCEDURAL BACKGROUND

In August 1998, Plaintiffs initiated this action seeking relief for sexual harassment, discrimination and retaliation pursuant to 42 U.S.C. §§ 2000e, *et seq.* and N.C.Gen.Stat. § 143–422.2 and asserting state law claims for negligent hiring, retention and management, and negligent and intentional emotional distress. Defendants answered and Defendant Barnett also moved for judgment on the pleadings. After the Magistrate Judge entered a Memorandum and Recommendation thereon, Plaintiffs filed this motion for class certification. The Court will first address that motion and then will consider the objections to the Memorandum and Recommendation.

### II. CLASS CERTIFICATION

Federal Rule of Civil Procedure 23 sets forth a two-part test for certifying a class action. First, the Plaintiffs must show four prerequisites: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims ... of the representative parties are typical of the claims ... of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). If each of these prerequisites is met, then the putative class must show that it fits into one of three categories specified in the Rule. Fed.R.Civ.P. 23(b). Unless each prerequisite is met, a determination under Rule 23(b) is unnecessary. *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 337 n. 3 (4th Cir.1998).

> [T]he final three requirements of Rule 23(a) "tend to merge," with commonality and typicality "serv[ing] as guideposts for determining whether ... maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."

*Id.*, at 337 (*quoting General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

In ruling on a motion for class certification, the district court must accept the allegations of the complaint as true. *In re Kirschner Med. Corp. Securities Litig.*, 139 F.R.D. 74, 81 (D.Md.1991). Nonetheless, the burden of establishing the right to certification remains with the proponents thereof. *Stastny v. Southern Bell Tel. & Tel. Co.*, 628 F.2d 267 (4th Cir.1980).

■ The class which Plaintiffs would have certified is described as "all women who: (1) were employees of MGM Brakes in Murphy,

North Carolina, on or after July, 1995; (2) applied for employment with MGM Brakes in Murphy, North Carolina, on or after July, 1995; or (3) will in the future be employed by MGM Brakes in Murphy, North Carolina." Plaintiff Cox, one of the representative parties, worked at the MGM plant for a 10–month period in 1995. She alleges that a male co-worker forced her to look at his erect penis, another co-worker forced her to dance with him when he was intoxicated, a third co-worker grabbed her thigh and she was picked up and carried to a loading dock where she was soaked with water from a hose. She left the company because of these incidents. The second representative party, Plaintiff Dalrymple has worked at the plant since 1992. Male co-workers have asked her for dates, asked to see her body, touched her and threatened to retaliate against her. Plaintiff Hogsed also is still employed by MGM although she is currently on involuntary leave without pay. Co-workers have posted sexually explicit cartoons on which her name has been written, male co-workers asked her to have sex and someone wrote the word "bitch" on her chair. Plaintiff Ledford, the fourth representative party, worked at the plant for a little over one year in 1994 and 1995. While there, a male co-worker grabbed her crotch, she was pinned down by another male co-worker, her supervisor propositioned her for sex, touched her breasts and unzipped his pants in front of her. About a week before she left, two male co-workers picked her up and carried her to a truck where she was threatened by a supervisor with rape. The last representative party is Plaintiff Stalcup who worked at the plant from 1989 until 1996. A male co-worker grabbed her breast and other male co-workers repeatedly asked to see her breasts. The complaint does not contain any allegations that female applicants for employment were subjected to sexually harassing or discriminatory conduct.

Plaintiffs claim the class will include at least 81 women, but this estimate is based on the number of women who worked at MGM from 1995 through the present. At the time of the motion, 52 women worked at the plant. In response to the Defendants' interrogatories, the Plaintiffs named 28 women whom they claim were subjected to sexual harassment. Incidents listed therein involve 17 women. Plaintiffs contend the allegations of harassment, discrimination, retaliation and hostile work environment are subject to class-wide proof. They also claim the evidence which will prove their individual claims will also prove class claims.

> We cannot disagree with the proposition underlying the across-the-board rule—that [sexual harassment] is by definition class [harassment]. But the allegation that such [harassment] has occurred neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified. Conceptually, there is a wide gap between (a) an individual's claim that [s]he has been [harassed], ... and (b) the existence of a class of persons who have suffered the same injury as that individual such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims. For [Plaintiffs] to bridge that gap, [they] must prove much more than the validity of [their] own claim[s]. Even though evidence that [they] were harassed] may support the conclusion that [they] [were harassed because of their sex], such evidence would not necessarily justify the additional inferences (1) that this discriminatory treatment is typical of [the Defendants'] practices, (2) that [the Defendants'] practices are motivated by a policy of [sexual] discrimination that pervades [the plant], or (3) that this policy of [sexual] discrimination is reflected in [Defendants'] other employment practices, such as in hiring, in the same way it is manifested in [the work environment] ....
> If one allegation of specific discriminatory treatment were sufficient to support an across-the-board attack, every Title VII case would be a potential companywide class action. We find nothing in the statute to indicate that Congress intended to authorize such a wholesale expansion of class-action litigation.

*General Telephone Co.*, 457 U.S. at 158–59, 102 S.Ct. 2364 (footnotes omitted). Since no named Plaintiff has alleged conduct involving

her application for employment, the Court cannot find class certification as to this subclass appropriate. *Id.*

■ Attached to Plaintiffs' response to the Defendants' interrogatories is a summary of incidents alleging sexual harassment, discrimination and retaliation which spans a time period from 1989 through 1998. While many of the allegations involve egregious conduct, most of those incidents relate solely to the named Plaintiffs. Those involving putative class members are not solely sexual in nature. Some incidents include "horseplay" while others are questionably consensual in nature. And, although not clear, some individuals seem to have been dating others. *Kidwell v. Transp. Communications Int'l Union,* 946 F.2d 283, 305 (4th Cir.1991) **(commonality and typicality are not met by showing the existence of a wrong without an identifiable injury to each class member)**. One incident involved viewing obscene drawings in the men's restroom, raising the issue of why the female employee was present there. Another incident involved male employees' sexual remarks to a female employee whose husband had obtained a penile implant, again raising the issue of why such information became public knowledge. Some of the described incidents involved humor in which the female employees appear to have joined. It cannot be said that "as goes the claim of the named plaintiff, so go the claims of the class." *Broussard,* 155 F.3d at 340. Thus, without negating the seriousness of the allegations, there are unique factual circumstances pertinent to each class member. *Simmons v. Poe,* 47 F.3d 1370, 1381 (4th Cir.1995). In addition, only one named Plaintiff alleges discriminatory treatment as a result of gender; almost all allegations relate to sexual harassment and hostile work environment. None of the allegations contained in the answers to interrogatories involves discriminatory treatment.

Moreover, the claims of intentional and negligent infliction of emotional distress are not common throughout the class. And, as to those putative members to whom these claims would apply, they are heavily fact-oriented. In order to prove the essential elements of the claims, facts unique to each class member would have to be shown. *Broussard,* 155 F.3d at 340 ("[S]ubjecting **plaintiffs' tort [ ] claims to class treatment was likewise problematic.").** This is true not only as to the conduct of the male employees but also as to each member's damages. *Boley v. Brown,* 10 F.3d 218, 223 (4th Cir.1993). "[E]ach putative class member's claim for [ ] damages was inherently individualized and thus not easily amenable to class treatment." *Broussard,* 155 F.3d at 342. Some claims of putative members may be subject to a statute of limitations defense. This would involve individualized inquiry and could result in a conflict of interest among class members. *Id.,* at 337, 342; *National Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio,* 40 F.3d 698, 715 (5th Cir.1994). And, the issue and proof of punitive damages is equally divisive and individually oriented.

The Court cannot find the Plaintiffs have shown commonality of questions of fact and law or typicality of their claims with those of the class. Nor does it appear this class meets the numerosity requirement: the class is so numerous that joinder of all members is impracticable. It appears the true number of putative members is between 17 and 28, and those women who would actually join a class may be significantly less. The Court does not find joinder impracticable under these circumstances. *In re Long Term Administrative Segregation of Inmates,* 174 F.3d 464, 468 n. 3 (4th Cir.1999).

Plaintiffs repeatedly note that class actions have been widely used in actions based on Title VII. That does not relieve the undersigned of the obligation to make a determination on a case-by-case basis. *Lowery v. Circuit City Stores, Inc.,* 158 F.3d 742 (4th Cir.1998). Other reasons dictate against certification as well. *Id.,* at 757–59 (the court may consider factors other than those listed in Rule 23). In a case in which the number of putative members is as small as that at hand, class certification may actually make the litigation less economical both for the Plaintiffs and the Court. Mailing of the notices, for example, would entail every woman who worked at the plant during the time at issue with little likelihood each of them would

opt in. Case management would be unduly complicated and cumbersome. *Id.* In short, the Court finds certification in this case would be both inefficient and cumbersome and might well prolong or complicate the administration of justice. *Id.* The Plaintiffs' motion is therefore denied.

### III. OBJECTIONS TO THE MEMORANDUM AND RECOMMENDATION

■ Pursuant to 28 U.S.C. § 636 and standing orders of designation, the Court referred the motion of Defendant Barnett for judgment on the pleadings to the Magistrate Judge for a recommendation as to disposition. Barnett filed timely objections to the Magistrate Judge's recommendation that portions of his motion be denied. Therefore, the Court conducts a *de novo* review of those portions of the Memorandum and Recommendation to which specific objections have been filed. 28 U.S.C. § 636(b).

Plaintiffs allege that Barnett, who was their supervisor during the time at issue, not only tolerated the harassing behavior but instigated and participated in some of the more flagrant conduct. Barnett moved for judgment on the pleadings alleging a supervisor may not be liable under N.C.Gen.Stat. § 143–422.2, which provides the public policy of the State protects the right to hold employment without discrimination on the basis of sex by employers which employ 15 or more employees.[1] Based on the statute's wording and federal case law interpreting Title VII, Barnett claims a supervisor, as opposed to the employer, may not be sued for wrongful discharge in violation of public policy.

In interpreting § 143–422.2, North Carolina courts are guided by federal case law developed pursuant to Title VII. *N.C. Dept. of Correction v. Gibson,* 308 N.C. 131, 301 S.E.2d 78 (1983). The Fourth Circuit has recently held that Title VII does not provide for suit against a supervisor in his or her individual capacity, noting both the language of the statute and its remedial scheme is tied to employer, not individual, liability. *Lissau v. Southern Food Serv., Inc.,* 159 F.3d 177, 181 (4th Cir.1998). The Magistrate Judge noted this but felt compelled by the undersigned's decision in *EEOC v. Tar Heel Capital, Inc.,* 1:98cv84 (W.D.N.C. Dec. 3, 1998) to recognize the validity of such a state law cause of action. However, *Tar Heel Capital* did not address the issue of whether a supervisor may be sued in an individual capacity; rather, it dealt with whether North Carolina courts recognize sexual harassment as a cause of action pursuant to § 143–422.2. Certainly, the following language in that opinion would be misleading but for the fact that the only defendant in *Tar Heel Capital* was the employer: "A plaintiff pleading the acts of an employer demanding sexual favors ... states a claim under Title VII.... Thus, ... pursuant to the reasoning set forth ... in *Gibson,* a cause of action for sexual harassment also exists under N.C.Gen.Stat. § 143–422.2."

As the Magistrate Judge noted, North Carolina courts have been less than clear on the issue of supervisor liability. Most decisions address whether the plaintiff has stated a claim for discharge in violation of public policy, often allowing the case to go forward against defendants sued in their individual capacities who have not raised the issue of whether they *may* be sued individually. *See, e.g., Amos v. Oakdale Knitting Co.,* 331 N.C. 348, 416 S.E.2d 166 (1992); *Caudill v. Dellinger,* 129 N.C.App. 649, 656–57, 501 S.E.2d 99, 104 (1998), *aff'd in part, dismissed in part,* 350 N.C. 89, 511 S.E.2d 304 (1999); *Vereen v. Holden,* 121 N.C.App. 779, 468 S.E.2d 471 (1996). In *Lenzer v. Flaherty,* 106 N.C.App. 496, 418 S.E.2d 276 (1992), the Court of Appeals ruled that the trial court erred when it dismissed claims of wrongful discharge based on free speech asserted against defendant supervisors in their individual capacities. However, in a later opinion not cited by the parties, the Court of Appeals definitively stated, "Plaintiff also brought a state law cause of action against defendants for wrongful discharge. The trial court properly dismissed the claim against

---

1. Barnett actually moved to dismiss pursuant to Rule 12(b)(6). When his attorney realized the motion should have been filed prior to service of his answer, leave was sought and obtained to denominate the motion as one for judgment on the pleadings.

the individual defendants as they were not plaintiff's employers for the purposes of a wrongful discharge claim." *Lorbacher v. Housing Authority of City of Raleigh,* 127 N.C.App. 663, 671, 493 S.E.2d 74, 79 (1997). The undersigned concludes that North Carolina does not recognize a claim against a supervisor in an individual capacity for wrongful discharge in violation of public policy. Therefore, this claim against Barnett must be dismissed.

■ Barnett objects to the recommendation that the claims for intentional and negligent infliction of emotion distress survive his motion. He claims no behavior has been alleged sufficiently outrageous to prove the essential elements of such claims. Plaintiffs allege that Barnett rubbed Stalcup's arm and asked her to go for rides with him. He asked Ledford to come into his office to look at some pictures, at which point he walked up behind her, grabbed her breasts and tried to kiss her. Barnett asked another male worker if sex with Dalrymple was good. Barnett stared at Cox's breasts. Later, when she complained to him about sexual harassment, he said no one took her seriously because she smiled. Barnett tried to get Ledford to meet him by telling her his wife was out of town. On another occasion, he asked Ledford to come into his office at which point he unzipped his pants and asked her to look at his penis. Later that year, he called Ledford into his office again and tried to get her to have sex. During this encounter, he allegedly touched her breasts and engaged in obscene language. Barnett physically blocked Cox's exit one day, telling her she would have to get by him. He is alleged to have routinely put his arms around female workers. He routinely failed to discipline male co-workers who made sexual innuendos and overtones. Despite repeated complaints from the Plaintiffs, Barnett did nothing to stop the harassment.

In *Watson v. Dixon,* 130 N.C.App. 47, 502 S.E.2d 15 (1998), plaintiff sued Duke University and a fellow employee for negligent and intentional infliction of emotional distress. Among the conduct alleged was that Dixon made crank telephone calls to the plaintiff, rubbed his body against hers, drew a picture of her body with a penis, confined her to a room with him against her will, and made obscene comments about her. "Looking at all of the facts and attenuating circumstances, including the type of conduct engaged in and the length of time that the conduct continued, we conclude that Dixon's behavior does indeed meet the requirement for 'extreme and outrageous behavior.'" *Id.,* at 53, 502 S.E.2d at 20. The conduct alleged against Barnett is arguably more extreme than that involved in *Watson* and the Defendants' motion is denied.

Barnett's claims concerning supplemental jurisdiction do not warrant discussion.

### IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiffs' motion for class certification is hereby **DENIED;** and

**IT IS FURTHER ORDERED** that the motion of Defendant Barnett for judgment on the pleadings is **GRANTED** as to the claims brought pursuant to Title VII and N.C.Gen.Stat. § 143–422.2, and the same are hereby **DISMISSED.**

**IT IS FURTHER ORDERED** that Defendant Barnett's motion as to all other claims is **DENIED.**