***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Harris.
 *********** ISSUES
1. Whether the Industrial Commission has subject matter jurisdiction over this claim?
2. Whether Plaintiff sustained a compensable injury by accident on November 25, 2007? *Page 2 
3. Whether a purported settlement reached in this claim is enforceable?
4. Whether Plaintiff has shown that she is disabled?
 ***********
The Full Commission finds as fact and concludes as matters of law the following stipulations of the parties:
 STIPULATIONS
1. The date of the alleged incident that is the subject of this claim was November 25, 2007.
2. On such date, the employer-employee relationship existed between Defendant-Employer and Plaintiff.
3. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. On such date, Defendant-Employer employed three or more employees.
5. Liberty Mutual Insurance Company was the carrier on the risk on November 25, 2007.
6. Plaintiff's average weekly wage was $700.00, which yields a weekly compensation rate of $466.69.
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Industrial Commission Forms and filings
 • Exhibit 3: Plaintiff's medical records *Page 3 
 • Exhibit 4: Plaintiff's medical bills
 • Exhibit 5: Photographs (8) of shower area
The following documents were accepted into evidence as Defendants' Exhibits:
 • Exhibit 1: Documents regarding Defendant-Employer's investigation of
November 25, 2007 incident
 • Exhibit 2: Emails regarding purported settlement
Transcripts of the depositions of the following were also received following the hearing before the Deputy Commissioner:
 • Nita Aiken, M.S., L.P.C. (with Exhibit 1)
 • Dr. Louis Gagliano (with Exhibit 1)
 • Dr. James A. Smith (with Plaintiff's Exhibit 1)
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 54 years of age, with a date of birth of July 14, 1956. She has resided in Roseboro, North Carolina her entire life. She has a tenth grade education and has never obtained a GED.
2. Plaintiff began working for Defendant-Employer's (formerly Kelly Tire) Fayetteville tire plant when she was approximately 27 years old. She worked there for 25 years. For about the last 20 of those years, Plaintiff was a machine operator in the Banbury department at the plant. In this job Plaintiff pulled manufactured rubber off the machine, inspected it for *Page 4 
defects, and made sure it was covered with slurry to prevent sticking. Before her job at the Fayetteville tire plant, Plaintiff worked in a sewing factory for several years.
3. Plaintiff's shift at the Fayetteville tire plant was from 7:00 a.m. to 7:00 p.m. There were about 40 men and ten women working in the Banbury on Plaintiff's shift.
4. Defendant-Employer provided separate locker rooms and shower areas for the men and women working in the Banbury to shower at the end of their shifts in order to remove the chemical residue, created by the rubber manufacturing process, from their bodies and hair.
5. Plaintiff had seen signs posted in the workplace advising employees that the chemicals used in the rubber manufacturing process had been shown to cause cancer in animals and that employees should practice good hygiene by showering before leaving work. Plaintiff always showered at the plant after every shift before she left work; most of her co-workers did as well.
6. Rodney Jennings, Defendant-Employer's workers' compensation manager, noted that a basic component of rubber is carbon black, which is a byproduct of burning off gasoline. As he further noted, anyone who spends time in the Banbury gets covered in carbon black, and he would certainly take a shower before leaving work if he were exposed to carbon black. Jennings agreed that it was the best practice and simple common sense, that Plaintiff would take a shower before leaving work.
7. The women's shower room was located at the top of a staircase above the plant floor. There was no lock on the door and no office or work area located near the shower.
8. On November 25, 2007, Plaintiff left her work station shortly after 7:00 p.m., a little later than usual, because she had to tend to a problem with her machine. She then went to the showers. *Page 5 
9. When Plaintiff got to the women's shower room, she was alone there because all the other women on her shift had already finished showering. Plaintiff undressed, left her clothes in the locker area, and went to a shower stall.
10. As Plaintiff turned on the water and was about to get into the shower, she looked behind her and saw a man standing in the doorway of the shower area. He began making comments about Plaintiff's body.
11. Plaintiff had dropped her towel and was completely nude. She screamed at the man to get out but he remained standing in the doorway, the only means of entry to and exit from the shower stall area. The man told Plaintiff to "chill out," that he just wanted to look at her.
12. Plaintiff felt very threatened by the man. She had been the victim of sexual abuse when she was a child, and she was terrified that this man was going to rape her or kill her.
13. Plaintiff ran back toward the lockers, continuing to scream at the man to get out, but he still did not leave. As she got her clothes, the man kept making comments and gestures about her body. As Plaintiff struggled to put her clothes back on, the man finally left the women's shower room. Once Plaintiff had her clothes back on, she ran out of the locker room and down the stairs.
14. Plaintiff reported the incident immediately to the union shop steward and plant superintendent. A co-worker who was cleaning up in the area said that he had seen the man, a thin white man with sandy blonde hair in his early 50s wearing a jump suit and hat, come down the stairs. The shop steward and plant superintendent told Plaintiff they would investigate the matter. *Page 6 
15. After the incident in the showers, Plaintiff felt devastated and terrified. She returned to work the next day, but she was too scared to shower alone. Several of the women on Plaintiff's shift took turns waiting outside while she showered.
16. Plaintiff believed that the man was a contract worker for Defendant-Employer, but she got conflicting information from Defendant-Employer's personnel about whether any contract workers had been in the plant that night. Plaintiff came to believe that Defendant-Employer was not doing an adequate investigation to find the man and ensure that he would no longer be allowed in the plant. On one occasion, she thought she saw the man inside the plant again.
17. Several days after the shower incident, Plaintiff had to stay at her machine past 7:00 p.m., and there were no women left in the women's shower room when she arrived there. She asked a male co-worker to wait outside the door while she showered, but when she came out, he had left. Plaintiff was distraught and terrified when she realized that she had again been in the shower room alone with no protection. By the time she got home that night, she was hysterical and could not eat or sleep.
18. Plaintiff went to her family physician, who prescribed Ativan for her anxiety and referred her to a licensed professional counselor, Ms. Aiken.
19. Plaintiff last worked for Defendant-Employer on November 29, 2007. She has not worked since then.
20. Defendants denied this claim on a Form 61 filed on February 15, 2008.
21. Plaintiff first saw Ms. Aiken on December 5, 2007. She presented as tearful, trembling, nervous, unable to sleep, hypervigilant, and with a loss of appetite. Ms. Aiken *Page 7 
provided counseling and coping techniques to Plaintiff and continued to see her as of the hearing before the Deputy Commissioner.
22. Ms. Aiken diagnosed Plaintiff with post-traumatic stress disorder (PTSD). Ms. Aiken opined that the shower incident on November 25, 2007 was the precipitating factor that caused Plaintiff's PTSD.
23. According to Ms. Aiken, Plaintiff has also developed major depressive disorder and panic disorder since the shower incident. Plaintiff also developed clinical depression because of the loss of her career with Defendant-Employer following the shower incident. Ms. Aiken further opined that, while Plaintiff had a previous history of panic disorder, she had been able to function with it before the shower incident; it was only after the incident that Plaintiff's panic attacks became severe. Ms. Aiken noted that Plaintiff had effectively coped with other traumatic incidents in her life prior to the shower incident, and she did not believe that any other events in Plaintiff's life had contributed significantly to her mental health problems.
24. Ms. Aiken suggested vocational rehabilitation for Plaintiff. Plaintiff went to one session where it was suggested to her that she begin career re-training. According to Ms. Aiken, with Plaintiff's poor ability to concentrate given her fragile mental state, Plaintiff was overwhelmed with the prospect of re-training and did not pursue it further.
25. According to Ms. Aiken, Plaintiff's panic disorder could now interfere with her ability to hold a job and it might not be safe for Plaintiff to operate machinery in her mental condition.
26. Ms. Aiken noted that Plaintiff has worked hard in her therapy to recover and wants to return to work. Ms. Aiken believed that Plaintiff needed psychiatric treatment and she referred Plaintiff to Dr. Gagliano, a psychiatrist. *Page 8 
27. Plaintiff first saw Dr. Gagliano on January 14, 2008 and continued to see him as of the hearing before the Deputy Commissioner. Dr. Gagliano also diagnosed Plaintiff with PTSD. He has prescribed medications for Plaintiff's mental health.
28. Plaintiff saw Dr. Smith, another psychiatrist, for a one-time evaluation on June 11, 2009. He also diagnosed Plaintiff with PTSD related to the shower incident.
29. Ms. Aiken and Dr. Gagliano agreed that, at the least, Plaintiff cannot return to work in her previous job with Defendant-Employer absent some accommodation, such as the placement of a lock on the women's shower room door, the posting of a guard by the door, and/or a change in position for Plaintiff to one that did not call for a shower after the shift. No, accommodation has been offered by Defendant-Employer.
30. The greater weight of the evidence shows that Plaintiff is capable of some work, but that given her limited education and her limited vocational background, it would be futile for her to seek employment that would comport with the limitations she faces because of her compensable PTSD, depression and severe panic disorder.
31. This claim was previously scheduled for a hearing before Deputy Commissioner Rowell in February 2009. On February 10, 2009, Plaintiff's former counsel notified Deputy Commissioner Rowell that the parties had reached a settlement of the claim and would be submitting a clincher agreement. On February 13, 2009, Plaintiff's former counsel notified Deputy Commissioner Rowell that Plaintiff had decided not to accept the sum offered by Defendants. Plaintiff's former counsel then withdrew from representing Plaintiff, although there is no order pertaining to said withdrawal or preserving a fee for Plaintiff's prior counsel in the Commission's file. *Page 9 
32. No party to this claim signed a written settlement agreement. There is no evidence as to parties' agreement on several material terms of the alleged settlement, including the provision, if any, for the payment of Plaintiff's medical expenses. Further, there is no evidence as to Plaintiff's assent to the requisite provisions of North Carolina Industrial Commission Rule 502 and/or N.C. Gen. Stat. § 97-17.
33. The counseling and medical treatment that Plaintiff has received from Ms. Aiken and Dr. Gagliano for her PTSD, depression and severe panic disorder has been reasonably required to effect a cure, provide relief and/or lessen the period of Plaintiff's disability related to said conditions for the shower incident.
34. Plaintiff is not yet at maximum medical improvement for her PTSD, depression and severe panic disorder. Further counseling and medical treatment for Plaintiff's PTSD, depression and severe panic disorder is reasonably required to effect a cure, provide relief and/or lessen the period of Plaintiff's disability related to said conditions.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Defendants filed a Motion to Dismiss this claim with prejudice on grounds that the Industrial Commission does not have subject matter jurisdiction over this claim. Defendants asserted that this is a claim for sexual harassment and that the Workers' Compensation Act does not cover emotional injuries resulting from sexual harassment, citing to Hogan v. Forsyth Country Club Co.,79 N.C. App. 483, 340 S.E.2d 116 (1977). *Page 10 
2. However, this is a case of an assault that Plaintiff endured at work rather than sexual harassment. Sexual harassment is defined as severe or pervasive remarks, sexual advances, or other conduct that alters the terms, conditions or privileges of employment on the basis of sex. Meritor Savings Bank, FSB v.Vinson, 477 U.S. 57, 65, 106 S. Ct. 2399 (1986). A civil assault is defined as placing an individual in "reasonable apprehension of an immediate harmful or offensive contact." Johnson v.Bollinger, 86 N.C. App. 1, 356 S.E. 2d 378 (1987). The November 25, 2007 shower incident is more properly considered to have been an assault than sexual harassment, in that Plaintiff did not know the man, it was a one-time occurrence, and it made her reasonably fearful that she would be raped or killed.
3. An intentional assault endured by a worker may be compensable as an injury by accident if it was unexpected and not instigated by the worker, derived from the dangers particular to the employment and not common in everyday life, and did not arise from some personal motive unrelated to the employment. Sisk v. Tar HeelCapital Corp., 166 N.C. App. 631, 605 S.E.2d 564 (2004). In this claim, the shower incident was a complete surprise to Plaintiff, derived from the special need in Plaintiff's job for her to take a shower on Defendant-Employer's premises at the end of her shift, and did not arise out of some personal motive the man had against Plaintiff.
4. The shower incident arose out of Plaintiff's employment with Defendant-Employer, in that the man's act was enabled by the special need in Plaintiff's job for her to take a shower on Defendant-Employer's premises at the end of her shift. Also, the shower incident occurred in the course of Plaintiff's employment, in that it occurred at the end of Plaintiff's shift on Defendant-Employer's premises in the showers provided for the express purpose of workers' *Page 11 
cleanup after their shifts. N.C. Gen. Stat. § 97-2(6). Therefore, the Industrial Commission has subject matter jurisdiction over this claim, and Defendants' Motion to Dismiss should be denied.
5. Plaintiff has shown that she sustained a compensable injury by accident arising out of and in the course of her employment with Defendant-Employer in the shower incident on November 25, 2007.Id. She has also shown that, as a direct and proximate result of said incident, she has developed PTSD, depression and severe panic disorder. Booker v. Medical Center,297 N.C. 458, 256 S.E.2d 189 (1979); Click v. FreightCarriers, 300 N.C. 164, 265 S.E.2d 389 (1980).
6. The purported settlement agreement reached in this claim in February 2009 is unenforceable. To be enforceable, a settlement agreement in a workers' compensation claim must show a meeting of the minds between the parties as to all essential terms and must fully comply with North Carolina Industrial Commission Rule 502. There is no evidence of record to make either showing in this claim.Lemly v. Colvard Oil Co., 157 N.C. App. 99 (2003). Further there is not enough information available in the record to determine whether the purported settlement agreement was fair and just and in the best interest of all parties. N.C. Gen. Stat. § 97-17.
7. In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and extent of disability. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). Plaintiff has the burden of proving disability, defined as a loss of wage earning capacity.Russell v. Lowes Product Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993). In order to meet the burden of proving disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex CabinetCo., 305 N.C. 593, 290 S.E.2d 682 (1982). *Page 12 
An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages.Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowes ProductDistrib., supra.
8. The greater weight of the evidence shows that Plaintiff is capable of some work, but given her limited education and her limited vocational background, it would be futile for her to seek employment that would comport with the limitations she faces because of her compensable PTSD, depression, and severe panic disorder.Id. As such, she is entitled to have Defendants pay Plaintiff temporary total disability compensation for the period from November 30, 2007 through the present and ongoing. N.C. Gen. Stat. § 97-29; Russell v. Lowes Product Distrib.,supra.
9. Plaintiff is entitled to have Defendants pay for the counseling and medical treatment she has received from Ms. Aiken and Dr. Gagliano for her compensable PTSD, depression, and severe panic disorder. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
10. Plaintiff is entitled to have Defendants continue to authorize and pay for further counseling and medical treatment with Ms. Aiken and Dr. Gagliano for her compensable PTSD, depression, and severe panic disorder. Id.
 *********** *Page 13 
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants' Motion to Dismiss is hereby denied.
2. Subject to the attorney's fee provision below, Defendants shall pay to Plaintiff, temporary total disability compensation in the amount of $466.69 per week from November 30, 2007 until Plaintiff returns to work or further Order of the Commission. Defendants shall pay to Plaintiff any past due benefits owed to Plaintiff in a lump sum.
3. As Plaintiff attorney's fee, Defendants shall deduct 25 percent of the lump sum amount due per Paragraph 2 above and pay said portion directly to Plaintiff's counsel. Defendants shall also pay every fourth ongoing temporary total disability check directly to Plaintiff's counsel.
4. Defendants shall pay for the counseling and medical treatment Plaintiff has heretofore received from Ms. Aiken and Dr. Gagliano for her compensable PTSD, depression, and severe panic disorder, including but not limited to prescriptions and mileage. To any extent that Plaintiff and/or any third-party payor has paid for any such counseling and treatment, Defendants shall reimburse such payor(s) in full.
5. Ms. Aiken and Dr. Gagliano are hereby designated as Plaintiff's authorized treating providers in this claim, and Defendants shall, subject to the limitations period of N.C. Gen. Stat. § 97-25.1, authorize and pay for such further counseling and medical treatment that either of them recommends for Plaintiff's compensable PTSD, depression, and severe panic disorder, including but not limited to prescriptions, referrals, and mileage. *Page 14 
6. Defendants shall pay the costs. As part of their costs, if they have not done so already, Defendants shall pay expert witness fees to the deponents, the amounts of which were set in Orders previously filed by Deputy Commissioner Harris.
This is the 13th day of January 2011.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ LINDA CHEATHAM COMMISSIONER *Page 1